

FILED

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

'07 MJ 2603

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Mag. Case Number: DEPUTY |
| Plaintiff, | ) | COMPLAINT FOR VIOLATION OF |
| v. | ) | Title 21, U.S.C., Sections 952 and 960 |
| Ramon MADRIGAL-Navarro | ) | Importation of a Controlled Substance |
| Defendant, | ) | |

The undersigned complaint being duly sworn states:

On or about November 5, 2007, within the Southern District of California, Ramon MADRIGAL-Navarro did knowingly and intentionally import approximately 12.80 kilograms of Cocaine, a Schedule II Controlled Substance, into the United States from a place outside thereof; in violation of Title 21, United States Code, Sections 952 and 960.

And the complainant states that this complaint is based on the attached statement of facts, which is incorporated herein by reference.

Christopher D. Anderson
SPECIAL AGENT
U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT

SWORN TO BEFORE ME AND SUBSCRIBED IN MY PRESENCE, THIS 6th DAY OF NOVEMBER 2007.

MAGISTRATE JUDGE

**CATHY ANN BENCIVENGO**
**U.S. MAGISTRATE JUDGE**

## STATEMENT OF FACTS

On November 5, 2007, at approximately 5:20 PM, Ramon MADRIGAL-Navarro entered the United States (US) from the Republic of Mexico at the San Ysidro Port of Entry (POE), San Diego, California. MADRIGAL was the driver of a black 2002 Jeep Liberty bearing license plate 6AEA116.

At approximately 5:25 PM, Customs and Border Protection Canine Enforcement Officer (CEO) Drivdahl was performing pre-primary roving operations with his Narcotic Detection Dog (NDD) "SUZA" (CG-19), when "SUZA alerted to a 2002 black Jeep Liberty bearing license plate 6AEA116, as it drove by vehicle lane #7. CEO Drivdahl informed another officer of the canine alert. While the vehicle was stopped on lane #7, "SUZA" crawled under the vehicle and indicated by lying under the vehicle. CEO Drivdahl informed the officer of the location of "SUZA's" indication.

At approximately 5:20 PM, Customs and Border Protection Officer (CBPO) J. Cranford was conducting pre-primary A-TCET operations when he was informed by CEO Drivdahl, that his NHDD had alerted to a 2002 black Jeep Liberty bearing license plate CA/US 6AEA116. CBPO Cranford indentified the driver as, Ramon MADRIGAL-Navarro. CBPO Cranford asked MADRIGAL what he was bringing back from Mexico, and MADRIGAL stated he was brining nothing back from Mexico. MADRIGAL then stated he had owned the vehicle for approximately one month. CBPO Cranford noted that MADRIGAL began to exhibit signs of nervousness; shaking hands, visible pumping of the carotid artery and making little eye contact during questioning. During his inspection of the vehicle, CBPO Cranford discovered a non-factory compartment in the cargo area of the vehicle. CBPO Cranford opened the access panel to the compartment and observed numerous plastic wrapped packages inside. CBPO Cranford then

escorted MADRIGAL to the security office, while the vehicle was turned over to the secondary inspection area for further examination.

A border search of the vehicle conducted by CBPO Brunette led to the discovery of packages contained in a non-factory compartment in the floor behind the rear seats. A package was probed, and a white powdery substance was discovered. This substance field-tested positive for the properties of cocaine. The 10 packages weighed approximately 12.80 kilograms per the Customs scale.

At approximately 8:25 PM on November 5, 2007, MADRIGAL was advised of his Miranda rights by San Diego Police Officer (SDPO) Carlos Real in the Spanish language, who read from a pre-printed form also in the Spanish language. MADRIGAL stated he understood his rights and signed the waiver of rights form.

MADRIGAL stated the vehicle had been a gift from a client, known to him as Guadalupe Last Name Unknown (LNU.) Guadalupe LNU told MADRIGAL now that he had given the vehicle to MADRIGAL, MADRIGAL now worked for Guadalupe LNU. MADRIGAL stated that Guadalupe LNU was paying him to drive the vehicle from Los Angeles, California to Tijuana, Mexico three to four times per week. MADRIGAL stated he was being $400.00 US per week for driving the vehicle. MADRIGAL stated he had crossed approximately ten times since receiving the truck and thought it strange, he was being paid to simply drive the vehicle back and forth between Los Angeles and Tijuana. MADRIGAL admitted that he never asked Guadalupe LNU what was in the vehicle, but thought he may be smuggling something into the US. When asked what he thought he may be smuggling, MADRIGAL stated he thought it might have been gold or jewelry.

MADRIGAL stated that every time he crosses into Tijuana, Guadalupe LNU calls and tells him where to park the vehicle. After parking, MADRIGAL goes shopping for approximately one to one and a half hours and then returns to the vehicle and drives it to Los Angeles. MADRIGAL also stated that upon arrival in Los Angeles, Guadalupe LNU calls MADRIGAL and tells him to drive the car to either a local casino or shopping center. There MADRIGAL leaves the vehicle parked for approximately one to one and half hours. MADRIGAL stated that when he returns to the vehicle, it is sometimes in the same spot he left it, and some sometimes in another spot. MADRIGAL stated that once a week, Guadalupe LNU leaves $400.00 cash in the vehicle console, as payment for his driving services.

Christopher D. Anderson
SPECIAL AGENT
U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT


MAGISTRATE JUDGE